# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 14-215V
Filed: November 20, 2015
Not for Publication

* * * * * * * * * * * * * * * * * * * *
MELODIE A. ROSE and　　　　　　*
HARRISON M. ROSE, on　　　　　*
behalf of their daughter,　　　　　　*
ALLISON A. ROSE,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Petitioners,　　　　　*　　Petitioners' motion to dismiss; Gardasil;
　　　　　　　　　　　　　　　　*　　no expert medical opinion in support
　　　　v.　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
SECRETARY OF HEALTH　　　　　*
AND HUMAN SERVICES,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Respondent.　　　　 *
* * * * * * * * * * * * * * * * * * * *

Melodie A. Rose and Harrison M. Rose, Portland, OR, for petitioner pro se.
Darryl R. Wishard, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

On March 18, 2014, petitioner (then Melodie Rose because Allison had not yet reached her majority) filed a petition under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa-10–34 (2012), alleging that Gardasil vaccine administered March 21, 2011

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

caused her daughter Allison: pain up and down her spine, excessive fatigue, muscle weakness, muscle and joint pain, gastrointestinal problems, headaches, nausea, indigestion, chronic fatigue syndrome, and fibromyalgia.

An issue in this case is that, while petitioner alleges Allison suffered these symptoms after her March 21, 2011 vaccination, the medical records describe Allison having a number of these symptoms prior to her vaccination.

Initially, Andrew Downing represented petitioner, but he moved to withdraw on October 14, 2014, which motion the undersigned granted on October 14, 2014. In the undersigned's Order, the undersigned directed petitioner, now pro se, to contact the undersigned by October 28, 2014 to schedule a telephonic status conference. Petitioner did not contact the undersigned's law clerk although the law clerk called petitioner, left voicemail messages, and e-mailed petitioner but received no response to her calls or email message. On November 5, 2014, the undersigned issued an Order to Show Cause why the case should not be dismissed, giving petitioner until November 19, 2014 to contact the undersigned's law clerk. On November 6, 2014, petitioner contacted the undersigned's law clerk and a telephonic status conference was scheduled for November 12, 2014.

On November 12, 2014, the undersigned held a telephonic status conference with petitioner and respondent. Petitioner said she was looking for another attorney. The undersigned asked petitioner to file three years of pre-vaccination records and Allison's psychiatric records. Petitioner said that Kaiser Permanente was non-compliant. Petitioner requested until January 2015 to retain an attorney. In an Order dated November 13, 2014, the undersigned set another telephonic status conference for January 16, 2015, and reminded petitioner that if she intended to proceed with the case, she needed to file Allison's medical records pre-dating by three years her vaccination, including any psychiatric records.

On January 16, 2015, petitioner did not appear at the telephonic status conference and did not contact the undersigned's law clerk to advise her that she could not appear and to ask to reschedule the telephonic status conference. On January 21, 2015, the undersigned issued an Order stating that the next telephonic status conference was on March 11, 2015, confirming the date and time with petitioner.

On March 11, 2015, the undersigned held a telephonic status conference with petitioner and respondent. Petitioner said she had found an attorney, Peter Sarda, but had not retained him yet. She said that Mr. Sarda wanted a Dr. Harum to review the case, and petitioner was going to send the records to Dr. Harum by the end of the month. The undersigned reminded petitioner that if she intended to proceed, she needed to file records pre-dating the vaccination by three years, including psychiatric records. The undersigned set a new telephonic status conference for May 11, 2015.

Petitioner requested a rescheduling of the status conference set for May 11, 2015, and the undersigned set a new status conference for July 21, 2015. On July 21, 2015, the undersigned held a telephonic status conference with petitioner and respondent. Petitioner said she could not

afford an attorney and intended to go forward pro se.  Peter Sarda was not her counsel.  Allison Rose, the new petitioner, said she wanted three months to find an attorney.  By Order dated July 22, 2015, the undersigned changed the caption of the case to reflect Allison's majority and her new status as petitioner, and set October 21, 2015 for another telephonic status conference.

On October 16, 2015, Melodie Rose telephoned the undersigned's clerk and asked for a postponement of the October 21, 2015 telephonic status conference for another three months.  The undersigned had not received any notation from pro se petitioner Allison Rose, pursuant to US Court of Federal Claims Rule 83.1(a)(3), authorizing her mother to represent her.  However, in light of the fact that absolutely no progress had been made in the one year that petitioner had been searching for an attorney, it seemed futile to give petitioner three more months to keep looking.  Petitioner had also not filed an expert opinion from a medical doctor in support of her allegations.  The medical records do not support petitioner's allegations.

On October 19, 2015, the undersigned issued an Order to Show Cause why this case should not be dismissed, setting petitioner's response for November 20, 2015.  The undersigned also cancelled the October 21, 2015 telephonic status conference.

On November 16, 2015, petitioner's mother, Melodie A. Rose, e-mailed a statement her daughter Allison A. Rose made, requesting that her parents Melodie A. Rose and Harrison M. Rose represent her.  On November 17, 2015, the undersigned filed petitioner's request by herleave and directed the Clerk of Court to change the case caption to reflect that Allison A. Rose's parents were the new petitioners.

On November 19, 2015, Allison A. Rose's mother Melodie A. Rose e-mailed a motion to dismiss the petition.  On November 20, 2015, the undersigned filed petitioners' request by her leave.  The undersigned **GRANTS** petitioners' motion and **DISMISSES** this case.

## FACTS

On February 15, 2011, one month before Allison received her third Gardasil vaccination, she saw Dr. Adrienne Polishook Tuch.  Med. recs. Ex. 2, at 4.  Allison's prior medical history consisted of multiple complaints about fatigue, school absences, and headaches over the years.  Id.  She saw Dr. Tuch that day to complain of left ear pain.  On physical examination, Dr. Tuch noted that Allison had congestion and a runny nose.  Id.  Dr. Tuch also noted that Allison was tearful in her office.  Id.  Allison stated she had been depressed for a while and had missed a lot of school days.  Id.  She said she had lost pleasure in activities and had thought about hurting herself.  Id.  Allison's father had a history of depression and was on medication.  Id.

On March 10, 2011, Allison saw Dr. Irmeen Musharraf Ashraf for left ankle pain.  Id. at 10.  Her father wanted a referral to a chiropractor because of Allison's chronic back pain, which she had suffered from for years.  Id.  Her BMI was 16.7.  Id.  Allison was 5'6" tall and weighed 103 pounds.  Id.  Dr. Ashraf diagnosed Allison's back pain as probably secondary to scoliosis.  Id.

On March 21, 2011, she saw Dr. Tuch, complaining of a headache for two days and abdominal pain for two days.  Id. at 14.  Allison was diagnosed with primary depression and malingering.  Id.  She had missed school frequently.  Id. at 15.  She had been seen one month earlier, and though she had been tearful and admitted to feeling depressed, she had refused to go to a child psychiatrist.  Id.  She received her third Gardasil vaccination.  Id. at 16.

Allison was scheduled to see a psychiatrist on April 7, 2011, but failed to keep her appointment.  Id. at 33, 57.

Although Allison received physical therapy for her back pain, she refused to do exercises at home.  Id. at 38.  Petitioner telephoned Allison's physical therapist Nicole J. Huth on April 7, 2011.  Id. at 37-38.  Physical therapist Huth noted in the record of this conversation that the mother wanted Allison to attend a basic spinal conditioning class and questioned the severity of her daughter's pain.  Id. at 38.  She noted, "Mother doubts pain because she sees daughter 'bopping' around and doesn't think daughter could do that if having so much pain."  Id.

On September 22, 2011, petitioner told physical therapist Huth that Allison was "delusional."  Id. at 81.

On October 10, 2011, Alison was admitted to Emergency Psychiatric Services at Santa Clara Valley Medical Center because she threatened to cut herself and family members.  Med. recs. Ex. 7, at 1.  She claimed her father beat her up that day.  Id. at 3.  Allison stated she did not like her father or her brother, and had not been eating or taking her medications.  Id. at 8.  Her mother had been in the hospital for the prior five days and, when her father went to the hospital to pick up the mother, Allison called her mother and told her she had a knife and was going to cut off her brother's head.  Id.  Then she called her mother again and said that the dog had bit her.  Id.  She was crying and hysterical.  Id.  The mother called the police and sent the father home to check on Allison.  Id.  The doctor decided to hospitalize Allison.  Id. at 9.  Allison was diagnosed with depression.  Id. at 12.  Allison was failing at school because she had not been going.  Id.  She said she had stolen a bike the prior year.  Id.

## DISCUSSION

The medical records indicate that Allison suffered from chronic back pain for years prior to 2011.  Obviously, any symptom claimed to be caused by Allison's third Gardasil vaccination but whose onset occurred before the vaccination cannot be due to the vaccination.  Shalala v. Whitecotton, 514 U.S. 268, 274 (1995) ("If a symptom or manifestation of a table injury has occurred before the vaccination, a symptom or manifestation after the vaccination cannot be the first, or signal the injury's onset.  There cannot be two first symptoms or onsets of the same injury.").

The undersigned notes that no physician who treated Allison considered her condition to be caused by her vaccination.  Rather, Dr. Ashraf attributed Allison's years of back pain prior to

March 10, 2011 to her scoliosis, and her depression has a familial base in that her father had depression for which he received treatment.

Allison's refusal to do physical therapy exercises to help her back, yet her ability to "bop" around the house, belies her complaints of pain, which her mother noticed and duly reported to Allison's physical therapist. Allison has a pre-vaccination diagnosis of malingering.

To satisfy their burden of proving causation in fact, petitioners must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause of and effect showing that the vaccination was the reason for the injury [,]" the logical sequence being supported by a "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioners' affirmative duty to show actual or legal causation." Grant, 956 F.2d at 1149. Mere temporal association is not sufficient to prove causation in fact. Id. at 1148.

Petitioners must show not only that but for her March 2011 Gardasil, Allison would not have had chronic fatigue syndrome, fibromyalgia, back aches, headaches, etc., but also that her March 21, 2011 vaccination was a substantial factor in causing her symptoms. Shyface v. Sec'y of HHS 165 F.3d 1344, 1352 (Fed. Cir. 1999).

The Vaccine Act does not permit the undersigned to rule for petitioners based on their claims alone, "unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). In the instant action, none of Allison's medical records substantiate petitioners' allegations and petitioners have not filed an expert report substantiating them. Moreover, since Allison complained of these symptoms before her third Gardasil vaccination, petitioners would have to prove: (1) they were significantly worse after her vaccination, and (2) the vaccine caused significant aggravation of these symptoms. 42 U.S.C. § 300aa-33(4).

Petitioners' motion for a decision dismissing the petitioner is **GRANTED**. This case is **DISMISSED** for failure to prove a prima facie case of causation in fact. Under Vaccine Rule 21(b)(1), a special master may dismiss a petition for failure of petitioner to prosecute.

**IT IS SO ORDERED.**

<u>November 20, 2015</u>                                                          _____
          DATE                                                                             Laura D. Millman
                                                                                                  Special Master